IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

JIMMY F. HARRISON PLAINTIFF

V. Case No. 4:25-CV-00911-BBM

FRANK BISIGNANO, Commissioner,
Social Security Administration DEFENDANT

**ORDER**

## I. INTRODUCTION

Jimmy Harrison applied for Title II disability and disability insurance benefits on November 8, 2018. (Tr. at 223). On January 16, 2020, he applied for Title XVI supplemental security income. (Tr. at 239). In both applications, he alleged his disability began on November 21, 2017. (Tr. at 223, 239). His claims were denied both initially and upon reconsideration, and he requested a hearing before an Administrative Law Judge ("ALJ"), which was held via telephone on March 4, 2020. (Tr. at 168, 41). At the hearing, Harrison amended his alleged date onset of disability to September 30, 2018. (Tr. at 49).

On April 30, 2020, the ALJ concluded that Harrison was not disabled. (Tr. at 15–28). Harrison requested review by the Appeals Council, which was declined, and he pursued judicial review. (Tr. at 1). On September 22, 2022, this Court reversed the Commissioner's decision and remanded the case for further proceedings. *Harrison v. Comm'r of Soc. Sec. Admin.*, No. 4:21-CV-00076-LPR-ERE, 2022 WL 1541609 (E.D. Ark. May 16, 2022), *recommendation adopted*, 2022 WL 4381076 (E.D. Ark. Sept. 22, 2022) ("*Harrison I*").

On remand, the ALJ held a telephone hearing on July 31, 2023. (Tr. at 1256). Thereafter, on October 13, 2023, the ALJ again concluded that Harrison was not disabled. (Tr. at 1233–48). Harrison requested review, and the Appeals Council denied the request. (Tr. at 1223). The ALJ's 2023 decision now stands as the final decision of the Commissioner, and Harrison requests judicial review. For the reasons set forth below, the Court reverses the ALJ's decision and remands the case for further proceedings.

## II. THE COMMISSIONER'S DECISION

At Step One of the sequential five-step analysis,[1] the ALJ found that Harrison had not engaged in substantial gainful activity since September 30, 2018. (Tr. at 1235). At Step Two, the ALJ identified the following severe impairments: mood/bipolar disorder, anxiety/panic disorder, personality disorder, posttraumatic stress disorder, moderate lumbar stenosis of the lumbar spine with disc bulges, and osteoarthritis. (Tr. at 1236). After finding that none of Harrison's impairments or combination of impairments met or medically equaled a listed impairment, (Tr. at 1236–38), the ALJ determined that Harrison had the residual functional capacity ("RFC") to perform light work, except that he could only occasionally climb ladders, ropes, scaffolds, ramps, and stairs; occasionally stoop, kneel, crouch, and crawl; never work with extreme heat, humidity, or cold; understand, remember, and carry out simple, routine, and repetitive tasks; respond to usual work

[1] Using a five-step sequence, the ALJ determines: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

situations and routine work changes; and engage in social interaction that is incidental to the work performed. (Tr. at 1238–46).

At Step Four, the ALJ found that Harrison was unable to perform past relevant work but could perform jobs that exist in significant numbers in the national economy, including merchandise marker, mail sorter, and collator operator. (Tr. at 1247–48). Consequently, the ALJ found that Harrison was not disabled. (Tr. at 1248).

## III. DISCUSSION

### A. Standard of Review

"In reviewing the ALJ's decision," the Court "examine[s] whether it is supported by substantial evidence on the record as a whole and whether the ALJ made any legal errors." *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). "Substantial evidence is that which a 'reasonable mind might accept as adequate to support a conclusion,' whereas substantial evidence on the record as a whole entails 'a more scrutinizing analysis.'" *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted). "Our review 'is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision . . . . [W]e also take into account whatever in the record fairly detracts from that decision.'" *Gann v. Berryhill*, 864 F.3d 947, 950–51 (8th Cir. 2017) (citation omitted). "Reversal is not warranted, however, 'merely because substantial evidence would have supported an opposite decision.'" *Reed*, 399 F.3d at 920 (citation omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of

'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . is 'more than a mere scintilla.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citation omitted).

**B. Relevant Facts and Medical History**

The last medical record reviewed in *Harrison I* was from Counseling Associates and dated February 17, 2020. 2022 WL 1541609 at *5.[2] Harrison continued to receive regular treatment at Counseling Associates between March 2020 and June 2023. (Tr. at 1621–1744). On March 13, 2020, his therapist noted that "client remains symptomatic" and had made no significant progress. *Id*. at 1742. At an appointment on July 7, 2020, Harrison discussed forgetting his medication. *Id*. at 1726. On August 8, 2020, Harrison again reported struggling to take his medication, and his therapist discussed the consequences of not doing so. *Id*. at 1722. Notes indicate that Harrison "may have regressed somewhat since the previous session" and that it was "concerning that he is struggling with taking his medication." *Id*. Harrison's prognosis was listed as "[g]uarded." *Id*.

Harrison's "cycle of him not taking his medication" was again addressed at a visit on November 2, 2020. *Id*. at 1710. Harrison stated that "[i]t's my pride" and that he was afraid of being in relationships because he felt like he would let people down. *Id*. Harrison

[2] This Court adopts the relevant facts and medical history outlined in *Harrison I*, 2022 WL 1541609, at *2–5, for the period prior to March 2020.

remained symptomatic, with no significant progress, and his prognosis was guarded. *Id*. Harrison had "some mild progress" in December 2020. *Id*. at 1707. Thereafter, in February 2021, Harrison described starting work on his father's chicken farm, and his therapist noted that his prognosis was "fair" but that he remained symptomatic and had not made significant progress. *Id*. at 1698.

By April 2021, however, Harrison reported a "blow up" with his girlfriend and stated that he felt "very emotional" and was not taking his medication as instructed. *Id*. at 1693, 1695. In August 2021, Harrison again acknowledged that he needed "to make improvements on taking his medications regularly" and that he had "anger outbursts which affect his relationships." *Id*. at 1685, 1688. In October 2021, Harrison reported "a possible recent manic episode," stating that he had "stopped taking his medications for a few weeks" and that he was "extremely irritable and easily angered." *Id*. at 1682. His depressive symptoms were worse. *Id*.

At a November 2021 appointment, Harrison said that he was taking his medications regularly. (Tr. at 1680). However, at a medication-management appointment on December 1, 2021, Harrison reported that he "got messed up on [his] medicines" and did not have "updates at the pharmacy." *Id*. at 1674. He reported adherence with medications, but practitioner notes indicate that he "should be out." *Id*. Records from the next few months indicate adherence to medication and some progress—until June 2022, when Harrison reported that he was "struggling to take his meds as prescribed, often times forgets, [and] skipped about half the months['] worth of meds." *Id*. at 1659. He was "up and down,"

sleeping too much, and had "noticed his temper flaring more and getting stuck on certain issues." *Id*.

At a follow-up appointment in September 2022, Harrison admitted that he would be "doing well with stable mood and behaviors, then [stop] taking his meds, then became manic, angry episodes, unstable moods, unstable behaviors, relationship problems, and impulsive behaviors." (Tr. at 1653). His therapist noted that Harrison "was able to see this pattern as self sabotage because he 'likes to live in chaos and if there isn't choas than [sic] I make it.'" *Id*. at 1653. Moreover, the therapist indicated:

> Client endorsed many personality d/o traits that should continue to be evaluated throughout continued treatment. (social and relational paranoia, unstable and intense interpersonal relationships, identity disturbances, impulsivity that result in self damanging [sic] behaviors, reactive mood, intense irritability, intense anger/difficulty controlling anger, possible dissociative symptoms). *This seems to be the issue with his inconsistency in his medication compliance and behavior management plan*. He is aware of the cycle that he is creating. He is aware that stopping his medication can lead to a manic and/or depressive episode. He is able to identify positive ways of coping and positive reasons why he should continue to take his medication.

*Id*. (emphasis added). Harrison reported that he was "only taking [his medications] about 1/2–1/3 of the time." (Tr. at 1654). He acknowledged that "I do pretty good when I remember to take my medicine." *Id*.

By December 2022, Harrison reported worsening depressive symptoms, increased stressors, and angry outbursts. (Tr. at 1650). Notes indicate that "[h]e continues to have difficulty regulating his emotions most of the time and uses anger . . . as a negative way to communicate his needs." *Id*. In early 2023, Harrison reported improved medication compliance and improved moods. *Id*. at 1630–40. However, in April 2023, Harrison was

inconsistent in taking his medication and reported worsening irritability and emotional instability. *Id*. at 1629. Notes indicate "[n]o progress—client continues to be inconsistent with taking his medications and utilizing positive coping." *Id*. at 1628. It was recommended that he been seen for therapy more often. *Id*.

In May 2023, Harrison felt "somewhat better" and "mood is more stabilized," but "he continues to struggle with taking his medications consistently . . . and continues to struggle with regulating his emotions and having angry responses." (Tr. at 1626). On June 8, 2023, he reported a "depressive episode" following insurance issues and an argument with his girlfriend where for "two days he rarely got out of bed, did not go to work, nor did he leave the house." *Id*. at 1623. He stated that he almost went to the hospital because of suicidal ideation. *Id*.

On June 20, 2023, Harrison was admitted to the Psychiatric Unit at Saint Mary's Regional Medical Center in Russellville, Arkansas, for "mood disorder" and "suicidal ideation." (Tr. at 1823). Harrison reported that he could not remember to take his Depakote, that the aripiprazole did not help his mood, and that he had trouble controlling his anger. *Id*. at 1827. He stated that he had a history of mania and staying up for weeks with high energy, which he stated happened without using drugs. *Id*. He did, however, acknowledge abusing methamphetamine and taking "any drugs I can get." *Id*. Harrison's medications were adjusted, and he was discharged on June 26, 2023. *Id*. at 1827, 1841–42.

### C. Harrison's Arguments on Appeal

Harrison asserts that the ALJ failed to follow this Court's remand order in *Harrison I*, resulting in multiple errors. (Doc. 7 at 9–20). Specifically, Harrison contends that (1) the

ALJ failed to fully and fairly develop the record, *id*. at 10–16; (2) the ALJ erroneously disregarded Harrison's subjective complaints, *id*. at 16–18; and (3) the ALJ crafted an RFC not supported by substantial evidence, *id*. at 18–20. This Court agrees that the ALJ failed to follow the Court's mandate on remand, requiring reversal.

Federal courts are authorized by 42 U.S.C. § 405(g) to review final decisions of the Social Security Commissioner. If a court orders remand, the Commissioner is not free to ignore the court's mandate, and "[d]eviation from the court's remand order in the subsequent administrative proceedings *is itself legal error subject to reversal* on further judicial review." *Sullivan v. Hudson*, 490 U.S. 877, 885–86 (1989) (emphasis added); *see also Brachtel v. Apfel*, 132 F.3d 417, 419–20 (8th Cir. 1997) (law-of-case doctrine applies to both courts and administrative agencies on remand). The Court of Appeals for the Eighth Circuit has long held that an inferior court—or in this case, an administrative agency—is bound to follow both the letter and the spirit of a remand, considering the entire appellate opinion. *Thornton v. Carter*, 109 F.2d 316, 320 (8th Cir. 1940); *see also Winberry v. Colvin*, No. 14-2182, 2015 WL 1893941, *3–4 (W.D. Ark. Apr. 27, 2015) (applying *Thornton* in Social Security case and affirming because the ALJ followed the "spirit of the remand"); *Herring v. Colvin*, No. 14-6015, 2015 WL 143869, *3–4 (W.D. Ark. Jan. 12, 2015) (applying *Thornton* in another Social Security case but reversing because the ALJ did not follow remand instructions).

**1. 2020 Administrative Decision**

To understand the error in this case, a brief review of the ALJ's 2020 decision and the Court's remand order in *Harrison I* is necessary. In 2020, the ALJ found that "claimant

has been prescribed appropriate medications to address his mental conditions; however, he has been inconsistent in taking them and following treatment advice." (Tr. at 24). The ALJ further noted that, "[w]hen taking medications as prescribed and attending counseling, the claimant showed effective daily function and an ability to process stressors, handle interpersonal conflicts, [and] improved memory, concentration and persistence." *Id.* The ALJ cited notes indicating that Harrison "did not like taking medication but realized it was helpful." *Id.*

In *Harrison I*, the Court found that "[t]he ALJ failed to develop medical evidence regarding the crucial issue of whether Mr. Harrison's noncompliance was attributable to his mental impairments, and this error tainted her assessment of Mr. Harrison's credibility and determination of his RFC." 2022 WL 1541609, at *5. Specifically, "the ALJ failed to consider whether Mr. Harrison's noncompliance may be a product, rather than a contributing cause, of his mental impairments," and the ALJ "ultimately 'failed to make the critical distinction' between Mr. Harrison's awareness of the need to take his medicine and the question of whether his noncompliance was a medically-determinable symptom of his mental illness." *Id.* at *7 (citation omitted). Moreover, according to the Court, "the ALJ's failure to develop the record resulted *in a complete lack of medical evidence* addressing whether Mr. Harrison's noncompliance resulted from something other than his mental illness." *Id.* (emphasis added).

The Court in *Harrison I* relied on the Eighth Circuit's decision in *Pate-Fires*, which explained, "federal courts have recognized a mentally ill person's noncompliance with psychiatric medications can be, and usually is, the 'result of mental impairment [itself] and,

therefore, neither willful nor without a justifiable excuse.'" 564 F.3d 935, 945 (8th Cir. 2009) (citations omitted). As the Eighth Circuit further noted:

> Courts considering whether a good reason supports a claimant's failure to comply with prescribed treatment have recognized psychological and emotional difficulties may deprive a claimant of "the rationality to decide whether to continue treatment or medication." *See, e.g.*, *Zeitz v. Sec'y of Health and Human Servs.*, 726 F. Supp. 343, 349 (D. Mass. 1989) (recognizing claimant's agoraphobia, a psychosomatic anxiety-related disorder, "may defy any generally prescribed treatment requiring the will of the individual claimant to recover," such that claimant's failure to follow prescribed treatment, including taking prescribed medications and attending group therapy sessions, did not render claimant ineligible for disability benefits); *see also Thompson v. Apfel*, No. 97CIV.7697, 1998 WL 720676, at *6 (S.D.N.Y. Oct. 9, 1998) (holding ALJ erred in failing to consider whether claimant's psychological and emotional difficulties deprived claimant of the rationality to decide whether to continue treatment or medication). Thus, while there may be substantial evidence to support the ALJ's finding Pate–Fires knew she needed to take her medication, this evidence does not resolve the relevant question here: whether her failure or even refusal to follow the prescribed treatment was a manifestation of her schizoaffective or bipolar disorder. In this regard, *there is no medical evidence, i.e., a discussion by a doctor or other professional, which indicates Pate–Fires's noncompliance at any time was a result of something other than her mental illness*.

*Id*. at 945–46 (emphasis added). In *Harrison I*, the Court recognized the need for medical evidence in line with Eighth Circuit precedent, 2022 WL 1541609, at *7, and this Court agrees.

**2. 2023 Administrative Decision**

Turning to the ALJ's 2023 decision, the ALJ addressed Harrison's medication noncompliance as follows:

> The case was reversed and remanded for the assessment of the claimant's mental condition as a cause for medication noncompliance. *The undersigned finds the claimant's mental condition was not the reason for his noncompliance. The claimant told a provider that he stopped taking*

> *medications out of pride.* Although the claimant says he needs reminders for medications, this conflicts with the written report of the claimant's father Jackie Harrison, that the claimant did not need reminders to take medication or for personal care. At the 2023 hearing the claimant said he had taken medications for years and he knew the feeling when his medications were not working right because he had feelings of slipping.

(Tr. at 1243) (emphasis added) (citations omitted).

Although the ALJ addressed the ultimate question posed by *Harrison I*—whether Harrison's noncompliance with treatment, *i.e.*, his inconsistent medication adherence, was attributable to his mental impairments—the ALJ did not comply with the Court's specific directive, which included developing medical evidence to answer that question. Rather, the ALJ relied only on *Harrison's* statement about his noncompliance—"it's my pride." (Tr. at 1243, 1710). Although this comment credited to Harrison is contained in his therapist's medical notes, her recording of it does not convert Harrison's statement to medical evidence.[3] It remains Harrison's own assessment. *See* 20 U.S.C. §§ 404.1513(a)(4), 416.913(a)(4) (describing statements from the claimant as evidence from nonmedical sources). And the ALJ cited no other evidence, medical or otherwise, to support her finding that Harrison's mental impairments were not the reason for his medication noncompliance.

---

[3] Objective medical evidence includes "signs, laboratory findings, or both." 20 C.F.R. §§ 404.1502(f), 416.902(k). "Signs" is defined in 20 C.F.R. § 404.1502(g) to include "one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from your statements (symptoms)." A medical opinion is defined as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in" certain specified "abilities," 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). "Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, [and includes] judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. §§ 404.1513(a)(3), 416.913(a)(3).

Nor could the ALJ decide independently that Harrison's mental impairment was not the cause of his medication noncompliance. An ALJ may not "play doctor" and "draw improper references from the record or substitute a doctor's opinion for his own." *Adamczyk v. Saul*, 817 F. App'x 287, 289 (8th Cir. 2020) (quoting *Pate-Fires*, 564 F.3d at 946–47); *see also Guilliams v. Barnhart*, 393 F.3d 798, 803 (8th Cir. 2005) ("RFC is a medical question, and an ALJ's finding must be supported by some medical evidence.") (citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

Furthermore, the ALJ's focus on Harrison's own assessment of why he failed to take his medications is especially perplexing when there is other *medical* evidence in the record suggesting that Harrison's medication noncompliance was, in fact, attributable to his mental impairments. Throughout 2020, 2021, and 2022, Harrison struggled to take his medications regularly as prescribed, and he acknowledged that his medication noncompliance affected his mental stability. (Tr. at 1626, 1629, 1659, 1674, 1680, 1682, 1685, 1693–95, 1710, 1722, 1726). For example, in September 2022, his therapist observed that Harrison's social and relational paranoia, unstable and intense interpersonal relationships, identity disturbances, impulsivity and self-damaging behaviors, reactive mood, intense irritability, intense anger and difficulty controlling anger, and possible dissociative symptoms "seemed to be the issue with his inconsistency in his medication compliance and behavior management plan." (Tr. at 1653). Yet, the ALJ made no mention of the therapist's observation.[4]

[4] The ALJ did refer to Harrison's reported substance abuse in evaluating his mental impairment and noncompliance, noting:

In sum, the ALJ was instructed on remand to develop medical evidence to determine whether Harrison's mental impairment affected his noncompliance with prescribed medication, and the ALJ failed to do so. Because the Commissioner declined to assess, as directed, whether Harrison's noncompliance with taking his mental-health medication was genuinely willful or a result of his mental impairment, this Court must remand a second time.[5]

---

> There is also a correlation between periods of increased substance use and inpatient admissions. For example, approximately a month prior to the 2023 hearing[,] . . . Dr. William Kendrick diagnosed him with bipolar depressed with ideation and substance abuse disorder. The claimant testified at the 2023 hearing he had a meth relapse around that time. There are other indications that the claimant's mood and anger was tied to substance relapse. There is also evidence in the record where the claimant admits his main issue prior to inpatient admission was substance abuse.

(Tr. at 1243). Where a claimant has a history of substance abuse, additional analysis is required beyond the usual five-step disability analysis. *Brueggemann v. Barnhart*, 348 F.3d 689, 693–95 (8th Cir. 2003). Substance abuse can preclude an award of disability benefits if the abuse is a "contributing factor" to a determination of disability. *See* 42 U.S.C. § 423(d)(2)(c) ("An individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled."); *see also* Social Security Ruling (SSR) 13-2p (noting that drug or alcohol addiction "is not *material* . . . if the claimant *would still meet our definition of disability* if he or she were not using drugs or alcohol"). Importantly, the additional analysis only occurs where a claimant is found disabled. *See Brueggemann*, 348 F.3d at 694–95 (noting that ALJ must initially find claimant disabled to trigger additional substance-abuse analysis); *see also* 20 C.F.R. §§ 404.1535(a), 416.935(a) ("*If we find that you are disabled* and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability.") (emphasis added). If, on remand, the ALJ finds Harrison disabled, additional analysis regarding whether his substance abuse is a contributing factor material to his disability may be necessary.

[5] The Court also cautions the ALJ to be mindful of other potential errors. As discussed in *Harrison I*, the ALJ discounted Harrison's credibility based "on a perceived conflict between Mr. Harrison's testimony [at the 2020 hearing] that he generally attended therapy once a month, and his therapy records [that] showed 'visits at varied intervals, some several times per month and other occasions where the claimant went several months and even 6 months without treatment.'" 2022 WL 1541609, at *6; *see also* (Tr. at 24). The Court in *Harrison I* reviewed the record and found that "Mr. Harrison's testimony regarding therapy was not necessarily inconsistent with the medical record." 2022 WL 1541609, at *6. "In fact, Mr. Harrison's longitudinal record of treatment with Counseling Associates demonstrates a remarkably consistent therapy attendance record spanning multiple years and often involving several therapy sessions per month." *Id*. Despite the Court's ruling, the 2023 ALJ decision repeats the same claim disputed in

## IV. CONCLUSION

For the reasons stated above, the Commissioner's decision is not supported by substantial evidence. Accordingly, the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Order. Judgment will be entered for the Plaintiff.

SO ORDERED this 16th day of September, 2026.

Benecia Moore
UNITED STATES MAGISTRATE JUDGE

---

*Harrison I*, stating that "Counseling continued through August of 2018 at varied intervals, some with multiple visits in a month and other periods where the claimant went several months without treatment [which] conflicts with the claimant's 2020 hearing testimony of regular monthly counseling sessions." (Tr. at 1239) (citations omitted).